## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT ANDERSON, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>GRAMERCY PROPERTY TRUST, CHARLES E. BLACK, GORDON F. DUGAN, ALLAN J. BAUM, Z. JAMIE BEHAR, THOMAS D. ECKERT, JAMES L. FRANCIS, GREGORY F. HUGHES, JEFFREY E. KELTER, and LOUIS P. SALVATORE,<br><br>                  Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**1. VIOLATIONS OF SECTION 14(a) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 14a-9**<br><br>**2. VIOLATIONS OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |

Scott Anderson ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.     This is a class action brought by Plaintiff on behalf of himself and the other ordinary shareholders of Gramercy Property Trust ("GPT" or the "Company"), except Defendants (defined below) and their affiliates, against GPT and the members of GPT's board of trustees (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of GPT by  affiliates of Blackstone Real Estate Partners ("Blackstone").

2.      On May 6, 2018, the Board caused the Company to enter into an agreement and plan of Merger (the "Merger Agreement") with the Blackstone, pursuant to which, GPT shareholders will receive $27.50 for each share of GPT stock they own (the "Buyout Price").

3.      On, June 11, 2018, the Board authorized the filing of a materially incomplete and misleading preliminary proxy statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      While Defendants are touting the fairness of the Buyout Price to the Company's shareholders in the Proxy, they have failed to disclose material information that is necessary for shareholders to properly assess the fairness of the Proposed Transaction, thereby rendering certain statements in the Proxy incomplete and misleading. Specifically, the Proxy contains materially incomplete and misleading information concerning the valuation analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"), in support of their fairness opinion.

5.      It is imperative that the material information omitted from the Proxy is disclosed to the Company's shareholders prior to the forthcoming shareholder vote, so that they can properly exercise their corporate suffrage rights.

6.      For these reasons as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to GPT shareholders, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331, federal question jurisdiction, as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

8.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) GPT maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or trustees, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

10.     Plaintiff is, and has been at all relevant times, the owner of GPT common stock and held such stock since prior to the wrongs complained of herein.

11.     Defendant GPT is a Maryland real estate investment trust ("REIT") with its principle executive offices located at 90 Park Avenue, 32nd Floor, New York, New York 10016.

GPT is investor and asset manager of commercial real estate. The Company specializes in acquiring and managing industrial commercial real estate leased to tenants in major markets in the United States and Europe. GPT's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "GPT."

12.     Individual Defendant Charles E. Black is,and has been at all relevant times the Non-Executive Chairman and a trustee of GPT.

13.     Individual Defendant Gordon F. Dugan is, and has been at all relevant times Chief Executive Officer and a trustee of GPT.

14.     Individual Defendant Allan J. Baum is, and has been at all relevant times, a trustee of GPT.

15.     Individual Defendant Z. Jamie Behar is, and has been at all relevant times, a trustee of GPT.

16.     Individual Defendant Thomas D. Eckert is, and has been at all relevant times, a trustee of GPT.

17.     Individual Defendant James L. Francis is, and has been at all relevant times, a trustee of GPT.

18.     Individual Defendant Gregory F. Hughes is, and has been at all relevant times, a trustee of GPT.

19.     Individual Defendant Jeffrey E. Kelter is, and has been at all relevant times, a trustee of GPT.

20.     Individual Defendant Louis P. Salvatore is, and has been at all relevant times, a trustee of GPT

21.    The defendants identified in paragraphs 11-20 are collectively referred to as the "Defendants".

## CLASS ACTION ALLEGATIONS

22.    Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of GPT common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

23.    This action is properly maintainable as a class action for the following reasons:

(a)    The Class is so numerous that joinder of all members is impracticable. As of the close of business on March 31, 2018, GPT had 160,782,765 common shares outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public shareholders of Jaguar will be ascertained through discovery.

(b)    The holders of these shares are believed to be geographically dispersed through the United States;

(c)    There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members. The common questions include, *inter alia*, the following:

i.    Whether Defendants have violated Section 14(a) of the Exchange act and Rule 14a-9 promulgated thereunder;

ii.    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

       iii. Whether Plaintiff and the other members of the Class would suffer irreparable injury were they required to vote on the Proposed Transaction as presently anticipated.

(d)    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e)    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(f)    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## **SUBSTANTIVE ALLEGATIONS**

**I.    Background and the Proposed Transaction**

24.    GPT, incorporated on March 30, 2004, is a REIT, which is an investor and asset manager of commercial real estate. The Company's operating segments include Investments/Corporate and Asset Management. The Company is engaged in acquiring and managing single-tenant, net leased industrial, office, and specialty properties. The Company focuses on income producing properties leased to tenants in markets in the United States and Europe. The Company earns revenues through rental revenues on properties that it owns in the United States and asset management revenues on properties owned by third parties in the United States and Europe.

25.     Blackstone specializes in making real estate buyout investments. It seeks to invest in opportunistic investments in distressed or non-stabilized real estate assets and real estate related companies. It typically invests globally with a focus on the United States, Canada, Europe, and Asia. The fund also seeks to invest in large-scale shopping malls, logistics facilities, mixed-use properties, and office buildings in Latin America with a focus on Colombia.

26.     On April 30, 2018, GPT issued positive financial results for the First Quarter of 2018 ("Q1 2018"). The Company announced that they beat earnings estimates, increased revenue by 15% year-over-year, and increased core FFO by 17% year-over-year.

27.     On May 7, 2018, GPT issued a press release to announce the Proposed Transaction stating as follows:

**Gramercy Property Trust Enters into Definitive Agreement to be Acquired
by Blackstone for $27.50 per Share in a $7.6 billion Transaction**

New York, NY — May 7, 2018 — **Gramercy Property Trust (NYSE: GPT)** today announced that it has entered into a definitive agreement with affiliates of Blackstone Real Estate Partners VIII, under which Blackstone will acquire all outstanding common shares of Gramercy for $27.50 per share in an all-cash transaction valued at $7.6 billion.

The transaction has been unanimously approved by Gramercy's Board of Trustees and represents a premium of 23% over the 30-day volume-weighted average share price ending May 4, 2018 and a premium of 15% over the closing stock price on May 4, 2018.

Commenting on the acquisition, Gordon DuGan, Trustee and Chief Executive Officer of Gramercy said, "I speak for Ben Harris, Nick Pell and the entire team at Gramercy to say that we are very pleased to enter into this transaction.  We believe this validates the quality of the portfolio and platform that we have built. Entering into this transaction with Blackstone fulfills our Board of Trustees' mission to maximize shareholder value."

"We are pleased to acquire Gramercy and its strong portfolio of assets," said Tyler Henritze, head of US real estate acquisitions for Blackstone.

Completion of the transaction, which is currently expected to occur in the second half of 2018, is contingent upon customary closing conditions, including the

approval of Gramercy's shareholders, who will vote on the transaction at a special meeting on a date to be announced. The transaction is not contingent on receipt of financing by Blackstone.

Gramercy shareholders will be entitled to receive the previously announced second quarter dividend of $0.375 per share payable on July 16, 2018, and if the transaction is completed after October 15, 2018 Gramercy shareholders will receive a per diem amount of approximately $0.004 per share for each day from October 15, 2018 until (but not including) the closing date.

Morgan Stanley & Co. LLC is acting as exclusive financial advisor to Gramercy. Eastdil Secured LLC is acting as real estate consultant to Gramercy. Wachtell, Lipton, Rosen & Katz is acting as Gramercy's legal advisor. Citigroup Global Markets Inc. and BofA Merrill Lynch are acting as Blackstone's financial advisors in connection with the transaction. Simpson Thacher & Bartlett LLP is acting as legal advisor to Blackstone.

Gramercy will release financial results for its second quarter ended June 30, 2018 in late July, but, as a result of today's announcement, the company will not host a conference call and webcast to discuss financial results and operations for the second quarter.

**About Gramercy Property Trust**

Gramercy Property Trust is a leading global investor and asset manager of commercial real estate. The Company specializes in acquiring and managing high quality, income producing industrial commercial real estate leased to high quality tenants in major markets in the United States and Europe.

**About Blackstone**

Blackstone is a global leader in real estate investing. Blackstone's real estate business was founded in 1991 and has approximately $120 billion in investor capital under management. Blackstone's real estate portfolio includes hotel, office, retail, industrial and residential properties in the US, Europe, Asia and Latin America. Major holdings include Hilton Worldwide, Invitation Homes (single family homes), Logicor (pan-European logistics) and prime office buildings in the world's major cities. Blackstone real estate also operates one of the leading real estate finance platforms, including management of the publicly traded Blackstone Mortgage Trust.

28.     The Buyout Price is inadequate consideration for GPT shareholders given the

Company's recent financial results and economic outlook. Indeed, $27.50 represents a 12%

*discount* to the Company's 52-week high trading price. It is therefore imperative that shareholders

receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Transaction.

## II.    The Proxy Is Materially Incomplete and Misleading

29.    On June 11, 2018, GPT filed the Proxy with the SEC in connection with the Proposed Transaction.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to cast an informed vote regarding Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

30.    With respect to the Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy fails to disclose the following key components used in their analyses: (i) the inputs and assumptions underlying the selection of the various discount rate ranges (including the WACC components); (ii) the value of outstanding debt and cash used to adjust the enterprise value; and (iii) the actual terminal values calculated.

31.    These key inputs are material to GPT shareholders, and their omission renders the summary of the Discounted Cash Flow Analysis incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinion, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff,

Fairness opinion, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" Id. As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

Id. at 1577-78.

32.    Further, the Proxy provides data points for research analyst price targets and net asset value ("NAV"), but fails to include a complete disclosure of each analyst price target and NAV observed. A fair summary of this analysis requires the disclosure of the individual targets and NAVs for each analyst observed. Merely providing a range is insufficient, as shareholders are unable to assess whether the financial advisor summarized fairly, or, instead, emphasized only the figures that best present the targets in light of the Buyout Price, i.e. as low as possible. The omission of this information renders the summary of this analysis included in the Proxy materially incomplete and misleading

33.    With respect to Morgan Stanley's *Comparable Public Companies Analysis*, the Proxy fails to disclose the individual multiples Stifel calculated for each company utilized. The omission of these multiples renders the summary of the analysis and the implied per share equity value reference ranges materially misleading. A fair summary of companies analysis requires the disclosure of the individual multiples for each company; merely providing the range that a banker

applied is insufficient, as shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the implied share price ranges.

34.      Similarly, with respect to Morgan Stanley's *Premiums Paid Analysis*, the Proxy fails to disclose the individual premiums observed from each deal. The failure to disclose the individual premiums renders the summary of this analysis and the corresponding implied per share equity value reference range materially incomplete and misleading.

35.      In sum, the omission the of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

36.      Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.      Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

38.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39.     The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

40.     Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding the valuation analyses performed by the Morgan Stanley.

41.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, as officers and/or trustees, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

42.     Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most, if not all, of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction. Indeed, the Proxy states that Defendants were privy to and had knowledge of the financial projections for GPT and the details surrounding discussions with other interested parties and the Morgan Stanley. Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants

were required to review The Morgan Stanley's analyses in connection with their receipt of the fairness opinion, question the bankers as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

43.    Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement, the preparation and review of strategic alternatives, and the review of GPT's financial projections.

44.    GPT is also deemed negligent as a result of the Individual Defendants negligence in preparing and reviewing the Proxy.

45.    The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and will deprive them of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the shareholder vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.    The Individual Defendants acted as controlling persons of GPT within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as trustees of

GPT, and participation in and/or awareness of the GPT's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of GPT, including the content and dissemination of the statements that Plaintiff contends are materially incomplete and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of GPT, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy.

50.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

53.          Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff demands relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A.  Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.  Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C.  Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.  Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

E.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.  Granting such other and further equitable relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: June 13, 2018                    Respectfully submitted,

                                        */s/ Juan E. Monteverde*
                                            Juan E. Monteverde
                                            JM-8169

                                        **MONTEVERDE & ASSOCIATES PC**
                                        The Empire State Building
                                        350 Fifth Avenue, Suite 4405
                                        New York, NY 10118
                                        Tel.: (212) 971-1341
                                        Fax: (212) 202-7880
                                        Email: jmonteverde@monteverdelaw.com

                                        *Counsel for Plaintiff*